**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY LAW**

| | |
|---|---|
| ABBY BUCHMILLER | **Civil Action No.:** |
| Plaintiff, | |
| vs. | **Hon.** |
| SUNTUITY SOLAR, LLC | |
| Defendants. | |

### COMPLAINT

Plaintiff Abby Buchmiller ("Abby" or "Plaintiff"), by and through its undersigned counsel, by way of Complaint against Suntuity Solar, LLC ("Suntuity" or "Defendant") states as follows:

### INTRODUCTION

1. Defendant Suntuity contracted to pay Plaintiff Buchmiller $1,500,000 pursuant to a written agreement in exchange for a portion of her equity ownership in non-party Empire Solar, LLC ("Empire"). Nonetheless, Defendant Suntuity failed to make such payment, and instead, its top-tier officers and/or management engaged in a scheme to systematically defame Plaintiff so as to marginalize her within Empire, Suntuity, and the broader solar industry ("Solar Industry").

2. The result has been that Plaintiff, the former CEO of a national Solar Industry leader has been ousted from Empire, turning management control over to Suntuity, and left to half her prior market value within that industry after Suntuity pushed Empire into Bankruptcy.

**PARTIES**

3. Suntuity is a New Jersey limited liability company with its main office located at 2137 NJ-35, Holmdel, NJ 07733.

4. Abby Buchmiller is a resident of Utah and was the co-owner and CEO of Empire.

5. Non-parties Jason Nicholson ("Jason"), and Nicole Tomasin ("Nicole") are residents of California.

6. Non-Party Empire had been a national residential commercial solar power company, which installed solar panels throughout the United States with its principal place of business in Salt Lake City, Utah.

7. Non-Party Amanda Roseburg ("Amanda") had been a co-owner, and CFO, of Empire and is a resident of Utah.

8. Non-Party Steven Buchmiller ("Steven") formerly served as COO of Empire and is a resident of Utah.

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

10. Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) because Defendants transact business within this judicial district. Likewise, a substantial part of the events giving rise to this claim occurred within this judicial district. Moreover, at all relevant times, Suntuity has been and continues to be a resident of Monmouth County.

11. Abby Buchmiller executed, on behalf of Empire, a private bridge loan agreement (the "Private Bridge Loan Agreement") with Suntuity which included a clause stating: "This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to its choice-of-law principles. Lender and Borrower hereby irrevocably consent to the jurisdiction of the courts of the State of New Jersey and of any Federal court located in such state in connection with any action, suit or proceedings arising out of or relating to this Agreement or the Noter, and waive personal service of any summons, complaint or other process and agrees that the service thereof may be made by certified or registered mail or electronic communications pursuant to the Notice provisions of this Agreement."

12. Abby Buchmiller and Roseburg executed personally, and on behalf of Empire a letter agreement with Suntuity (the "Letter Agreement") which included a clause stating, in capital letters: "THIS AGREEMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF. ANY ACTION OR PROCEEDING AGAINST THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT MAY BE BROUGHT AND ENFORCED EXCLUSIVELY IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, AND THE PARTIES IRREVOCABLY SUBMIT TO THE JURISDICTION OF SUCH COURT IN RESPECT OF ANY SUCH ACTION OR PROCEEDING."

## RELATED ACTION(S)

13. On or about October 19, 2021, the Defendant filed a First Amended Complaint in this Court against the Plaintiff Abby, and Amanda, captioned Suntuity Solar, LLC v. Roseberg, et al., Civil Action No. 3:21-cv-17801, pending before the Honorable Michael A. Shipp, U.S.D.J.

The claims, albeit insufficiently pled to withstand a motion to dismiss, purport to sound in fraud, and conspiracy.

14. Abby and Amanda have moved to dismiss Suntuity's Complaint. Such motions to dismiss had been returnable on December 20, 2021, but, recently, at Suntuity's request, has been adjourned until January 3, 2022. It is unknown when such motion for dismissal will resolve but Abby expects that it will be some time before she would be able to file, no less prosecute, a counterclaim in that action and further expects that action will be dismissed with prejudice.

15. To avoid the delay that might result in a full adjudication of that motion, and in anticipation of that claim being dismissed with prejudice for failure to state a claim, Abby has commenced the instant action – not subject to a motion to dismiss – so that her simple claims of breach of contract and defamation can be litigated without delay.

**FACTUAL BACKGROUND**

16. Plaintiff and Amanda founded Empire in 2017. Thereafter, Plaintiff served as CEO, Amanda Roseburg served as CFO, and Steven Buchmiller served as COO.

17. Abby and Amanda owned 25% each of Empire, at the time of its founding; Ron Housekeeper and Jake Housekeeper owned 25% each of Empire, at the time of its founding.

18. Empire developed a "dealer program," *i.e.*, retained independent contractors and vendors to perform outsourced sales of Empire's residential solar installation services.

19. Ultimately, Empire grew to provide services within 18 states in the United States, and to have 22 branches. At its peak in 2020, Empire had 600 employees. At that time, all marketing and sales were outsourced (*i.e.*, dealer program).

20. At the beginning of 2021, Amanda and Abby purchased the 50% of Empire owned by the Housekeepers, and therefore, at that point Amanda owned 50% and Abby owned 50% of Empire.

21. Also, at the beginning of 2021, the marketplace took note of Empire, and the company started to become a target for investment and acquisition within the solar energy space.

22. Initially, a technologically based solar company, Clean.Tech, expressed interest in certain investment.

23. During this time, Suntuity, another smaller solar company based on the East Coast began communicating with Empire through Abby and Amanda.

24. Through its CEO Dan Javan and Nicole, a sales representative, Suntuity represented to Empire that Clean.Tech had been a bad partner for the solar space, and convinced Abby and Amanda that Empire, Abby, and Amanda should partner with Suntuity, instead, because of Suntuity's size and prominence in the space.

25. Ultimately, it turned out Suntuity was actually a much smaller company than Empire and would, in fact, be a poor partner.

26. When it first approached Abby, Suntuity represented that they did not want to disrupt the operations and management of Empire, but rather wanted to guide it financially, and provide liquidity to continue to grow Empire's success.

27. Because of that, on June 30, 2021, Suntuity executed a Letter of Interest ("LOI") to purchase a 60% percent interest in Empire, 30% from Abby and 30% from Amanda.

28. As part of this LOI, Suntuity provided an initial infusion of capital into Empire to support Empire in continuing to grow its success while Suntuity performed due diligence related to the LOI and its purchase of a majority interest in Empire.

29. Later, on July 9, 2021, Suntuity and Abby and Amanda, through Empire, entered into a written agreement ("July 9 Agreement") wherein Suntuity agreed to pay $1,500,000 to Abby for 30% of her interest in Empire.

30. Pursuant to this agreement, Suntuity agreed to pay the $1,500,000 to Abby through twenty-four (24) equal monthly installments of $62,500 starting on August 15, 2021.

31. At the same time, Abby and Amanda executed a management services agreement ("Management Agreement") with Suntuity and turned over all management interest and authority to Suntuity, as they continued to infuse capital into Empire.

32. At the execution of the Management Agreement, Suntuity began acting as Empire's sole manager, and Abby agreed to step down as CEO of Empire.

33. Abby relinquished her officer position under the belief that Suntuity was acting in good faith and intended to honor the July 9 Agreement to purchase a majority interest in Empire.

34. On August 15, 2021, while Suntuity still maintained complete management control over Empire, Suntuity failed to pay Abby the first installment owed to her under the July 9 Agreement, thereby breaching the July 9 Agreement.

35. To date, Suntuity has failed to make any payments owed under the July 9 Agreement and is, therefore, in breach of the July 9 Agreement.

36. After execution of the July 9 Agreement, Suntuity engaged in remarkably sharp and unethical business practices by, among other things, demanding that Abby and Amanda execute a highly unfavorable document as to themselves, and Empire, **or else**, Suntuity would exercise certain remedies that would harm Abby, Amanda, and Empire, and withhold promised financial support.

37. Abby refused to yield to that pressure campaign, so Suntuity, who was still in management control over Empire, mismanaged finances, withheld financial support, and ultimately forced Empire into Bankruptcy

38. In fact, after exe3cution of the July 9 Agreement, Suntuity quickly began mismanaging Empire's finances and workflow, and Suntuity quickly decided to exercise certain rights to place Empire into a Chapter 7 bankruptcy proceeding, thereby ceasing Empire operations completely.

39. While Empire was in the Chapter 7 proceeding, Suntuity, now acting as a creditor Empire, bought Empire's assets out of the bankruptcy, including a multi-million dollar pipeline of work, at a fraction of its worth.

40. As Suntuity placed Empire in bankruptcy proceedings, and as Suntuity to continue its non-payment of its obligations under the July 9 Agreement, Suntuity began engaging in a libelous campaign to disparage and marginalize Abby within the solar industry.

41. For instance, on August 15, 2021, the day Suntuity's first installment payment was due to Abby, Jason, an employee of Suntuity who was at all relevant times acting within the course and scope of his employment with and at the behest of Suntuity, represented to Empire Dealer employees, specifically Andrew Martinez, "Suntuity would like to save Empire, but Abby is demanding $2,000,000 to walk away and her greed is killing the deal."

42. As discussed *infra*, Empire Dealers are not employees of Empire. Rather, Empire Dealers are separate entities within the solar industry that work as sales representatives for myriad solar installation companies. Accordingly, the loss of relationships with such Dealers constitutes the loss of the marketing and sales arm for Abby for all her future business ventures.

43. This defamatory conduct caused substantial loss of trust in Abby with sales dealers, and industry professionals, within the solar industry.

44. Moreover, on August 16, 2021, Nicole, another employee at all times acting within the course and scope of her employment with and at the behest of Suntuity, represented to Empire Dealer partners, and employees, particularly "Josh" with Simple Solar and "Cody" with Click Solar, "Empire cannot pay you your owed commission payments because Abby is refusing to sign the final agreement causing the acquisition to fall through."

45. This defamatory conduct caused substantial loss of trust in Abby with sales dealers, and industry professionals, within the solar industry.

46. Additionally, on August 20, 2021, Jason and Nicole, again within the course and scope of their employment with and at the behest of Suntuity, represented to Empire Dealer partners and employees, specifically, Kerstin Larsen and Hilda Salazar from NextGen, "Abby took her family on an extravagant trip to Disneyland, fully paid for by the company and left us no choice but to file bankruptcy."

47. This defamatory conduct caused substantial loss of trust in Abby with sales dealers, and industry professionals, within the solar industry.

48. Further, on August 10, 2021, Dan Javan, the CEO of Suntuity, who was at all times acting within the course and scope of his employment with and at the behest of Suntuity, represented in a written press release that "the restructuring officer presented a Chapter 11 restructuring plan to both the owners of Empire with Suntuity agreeing to provide long term dip financing so that Empire could continue its ongoing operations. Unfortunately, the plan review was delayed and finally pushed back on by Empire's owners who provided no viable alternative options in lieu of the restructuring plan. Without the owners'

consensus and no additional cash flows, the restructuring officer determined that it could no longer create a viable restructuring plan for Empire that would be in the best interest of its employees and creditors. Considering this, a restructuring of Empire was no longer an option, and Empire was forced to close its doors in a Chapter 7 bankruptcy protection filing."

49. This defamatory conduct cause substantial loss of trust in Abby with sales dealers, and industry professionals, within the solar industry.

50. Following this, Suntuity personnel disseminated Abby's personal cell phone number to Empire Dealers and encouraged them to verbally and electronically harass Abby.

51. Upon information and belief, Suntuity made a number of other false statements about Abby in an attempt to defame and harm her personally and professionally.

52. This animus in the industry caused by such defamatory conduct, has resulted in Abby receiving significant "hate mail," threats, and harassing communications, including, but not limited to, a package of phallic paper cut-outs in a bag sent to her family home where she and her children reside.

53. Additionally, because of the defamatory statements, Abby has lost significant opportunities in the Solar Industry which has resulted in a cognizable loss of wages.

54. After Empire was forced into Bankruptcy proceedings, Abby interviewed for a position as an executive at another company in the Solar Industry.

55. Abby made it to the final stages of the interview and hiring process when she was informed that she was not a viable candidate to be an executive because of the vitriol being infused into the Solar Industry by Suntuity.

56. Instead, she would only be eligible for a non-public facing position receiving a much reduced salary.

## Count One
### (Breach of Contract)

57. Abby repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

58. On or about July 9, 2021, Abby and Defendant entered into a binding, fully integrated writing whereby Abby agreed to sell 30% of her interest in Empire to Defendant in exchange for payment to Abby in an amount of $1,500,000.

59. Pursuant to this agreement, Suntuity was supposed to begin paying Abby monthly installments on August 15, 2021.

60. As of July 9, 2021, pursuant to this agreement, Abby transferred her 30% ownership in Empire, along with her management authority over Empire, to Suntuity.

61. Abby performed her contractual obligations under the July 9 Agreement.

62. However, despite the fact that Abby performed her obligations, Defendant failed to make any payments on August 15, 2021.

63. To date, Suntuity has failed to remit and payment pursuant to its obligations under the July 9 Agreement.

64. Accordingly, Defendants have breached their contractual obligations to Abby, and, therefore, caused damages to Abby in an amount of, at least, $1,500,000.

## Count Two
### (Defamation)

65. Abby repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

66. Defendant made defamatory statements concerning Abby, accusing her of bad acts after relinquishing management control of Empire to Suntuity, her refusal to act in good faith regarding the transition of management to Suntuity, and her mismanagement of Empire funds.

67. All of these defamatory statements were demonstrably false.

68. Suntuity communicated these statements to someone other than Abby with fault at least amounting to negligence.

69. Suntuity communicated these statements to someone other than Abby either recklessly or knowing them to be false.

70. As a result of the foregoing conduct, Defendants caused damage to Abby, including substantial loss of wages and job opportunities, in an amount to be proven at trial.

**COUNT THREE**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

71. Abby repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

72. Every contract in New Jersey has an implied covenant of good faith and fair dealing.

73. The overall intention of the arrangement between Defendant and Abby had been for the Defendant to provide liquidity, and additional financial acumen, and Abby to continue to operate Empire for the success as Empire.

74. The intention of the arrangement was also for Abby and Suntuity to work together as partners to work for the success of Empire.

75. Rather than operate in that spirit, Defendant engaged in a course of conduct intended to use certain judicial process (*i.e.*, liquidations) to purchase the assets of Empire at a fraction of

their value while simultaneously attempting to sideline Abby from Empire and the industry, at large, through despicable libel and slander.

76. Such sidelining, included, but is not limited to, the following actions and inactions by Suntuity:

a. systematically shutting Abby out of all management decisions and meetings;

b. continually blaming Empire's financial and managerial difficulty on Abby even after Suntuity took management control over Empire and its finances;

c. hiring third-party management company as a further guise that it was a neutral player, but in fact, Suntuity continued to instruct this third-party company to push Abby out of management decisioning and meetings;

d. making all management decisions regarding Empire, despite the guise that Empire was being managed by a third-party;

e. despite her request, refusing to allow Abby to reengage in management of Empire and refusing to listen to Abby's ideas concerning placing Empire on sound financial footing.

77. By their actions, and inactions, the Defendant breached the covenant of good faith and fair dealing to Abby.

78. Such breach of the covenant of good faith and fair dealing caused damage to Abby in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Abby demands Judgment in her favor and against Suntuity as follows:

a. Judgment in an amount to be determined at trial;

b. Additional consequential, incidental and punitive damages;

c. Pre-judgment and post-judgment interest;

d. Reasonable attorney fees;

e. For such other relief as the Court deems just and proper.


Dated: December 8, 2021

By: /s/ David Graff, Esq.
David Graff, Esq. (034872008)
Graff Silverstein LLP
3 Middle Patent Road
Armonk, New York 10504
Attorneys for Abby Buchmiller